Upon these facts, his Honor, Judge Paxton, on the Spring Circuit of 1826, thinking that the purchaser at sheriff's sale took only one-half and one-eleventh of one-half of the land, decided that the parties were tenants in common in the proportion of five-elevenths to the demandant and six-elevenths to the defendant, and awarded a writ of partition; on the return of this writ at the next term, before his Honor, Judge Mangum, a judgment of confirmation was entered, whereupon the defendant appealed.
The question in controversy is what land was actually conveyed by the sheriff's deed to David Smith, *Page 142 
whether the whole tract as conveyed to Charles by his mother, or the land as devised to him by his father, and supposed to be acquired by the death of his brother John Smith. The granting part of the deed conveys the land "before (243) mentioned (in the recital), with the share of the crop thereon growing, with all the interest, estate, and profit of said Charles Smith in and to the said land and crop." The recital of the deed is that the sheriff levied "on a tract of land in the county of Pitt situate on the south side of Tar River, and on both sides of Hardie's Run, being the land devised to Charles Smith by his father, David Smith, and the undivided share of the said Charles Smith in the lands of his deceased brother, John Smith, containing together 500 acres, more or less." There is a further recital that he also levied "upon the interest or share of the said Charles in the crop growing upon the said land."
It is evident, then, that the sheriff neither levied upon nor sold the whole, as in fact owned by Charles Smith, because he expressly refers to his title as acquired from his father's will and the death of his brother. And as to the moiety devised to John Smith, that cannot pass by the deed, because the sheriff only conveys the individual share of Charles in that moiety. And to make this construction more obvious, the deed states that this individual share in John's moiety, together with Charles' moiety, contain together 500 acres. If the whole tract had been conveyed, Charles would have been entitled to the whole of the crop, whereas only the share he was supposed to be entitled to in John's part is conveyed.
The principle is conceded that if in the description of an estate in a deed there are particulars sufficiently ascertained to designate the thing intended to be granted, the addition of circumstances false or mistaken will not frustrate the deed. But I am unable to perceive any description or particular in this deed which ascertains that the whole tract of Charles, as derived from his mother's deed, was designated as levied upon or conveyed.
The first description, "a tract of land in the county of Pitt, situate on the south side of Tar River, and on both sides of Hardie's Run," does not designate the whole tract as (244) derived to Charles from his mother's deed, because it is equally a true description of the land upon the supposition that he derived title from his father's will and the subsequent death of his brother John. But when the recital proceeds to state, "being the land devised to Charles by his *Page 143 
father David," it limits and restricts a description applicable to both titles to that specific one which the sheriff believed him to own. Then the granting part of the deed conveys the tract "hereinbefore mentioned, with all the interest, estate, and profit of the said Charles" in and to the said land and crop.
Every part of the description is true in relation to the title supposed to be in Charles under his father's will; every part is false with respect to Charles' title to the whole tract from his mother's deed, provided the first general description is sustained by the recital, which the authorities cited clearly show it ought to be.
The sheriff's intent as to what land was meant to be sold can be collected only from the deed. It is the land there described which was levied upon, bid for, and sold, and what I apprehend the sheriff likewise intended to sell, though I have little doubt that if he had known the true state of the title he would have sold the whole tract; but being misled by the will of the father, he sold only the land claimed under it. It is of great consequence to the public that land sold at a sheriff's sale should be so specified and defined that every person attending may know what price to bid, and to be under no doubt as to the land he is bidding for. If the whole of Charles' land passed under this deed, it would give an undue advantage to those bidders who were apprised of the true state of the title, and enable them to purchase the whole tract, while others were regulating their bids by the belief that nothing more than the land described by the sheriff was set up for sale. In this case the price was given for the land as described (245) in the deed, and not for the land which it is almost certain the sheriff did not know of, and which there is no reason to believe the purchaser did. It has been said with much force on a similar question, "It ought to be received as a sound and settled principle, that the sheriff cannot sell any land on execution but such as the creditor can enable him to describe with reasonable certainty, so that the people whom the law invites to such auctions may be able to know where and what is the property they are about to purchase." Sales by process of law are under the protection of rules established for the common safety, and should be construed with a view to repress speculation and prevent the unnecessary sacrifice of property — consequences which would probably follow from a judgment in the defendant's favor. I am therefore of opinion that the judgment of the Superior Court be affirmed. *Page 144